**In re Richard R. HOLDER, Debtor.**

**Camille Hope, Trustee,**

v.

**United Companies Funding, Inc., Defendant.**

**Bankruptcy No. 00–51653.
Adversary No. 00–5154.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

March 26, 2001.

Elaina Massey, Macon, GA, for Chapter 13 Trustee.

Emmett L. Goodman, Macon, GA, for Defendant.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Trustee's Complaint to Avoid Preferential Transfer filed by the Chapter 13 Trustee, Camille Hope ("Trustee") against United Companies Funding, Inc. ("Defendant"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(F). The Court held a trial on Trustee's Complaint on February 14, 2001. After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

*Findings of Fact*

In 1998, Richard Holder ("Debtor") was married to Beverly McWhorter. On March 21, 1998, the couple purchased a Homestead mobile home, which they intended to occupy as their marital home. To make this purchase, the couple executed a promissory note and security agreement with Defendant. Some time thereafter the couple separated.

On August 6, 1999, Beverly McWhorter filed for bankruptcy under Chapter 13 of the Bankruptcy Code. In her bankruptcy petition, she listed Defendant as a creditor and listed Richard Holder as a codebtor on the debt relating to the mobile home. The plan to pay back her debts under Chapter 13 was confirmed on October 14, 1999. Under the plan, Beverly McWhorter agreed to abandon her interest in the mobile home.

On December 22, 1999, Defendant perfected its lien on the mobile home. As a result, the Chapter 13 Trustee for Beverly McWhorter filed a complaint to avoid preferential transfer on April 19, 2000. The complaint alleged that Defendant's perfection was a preference under Section 547 of the Code and requested that the lien be avoided. Defendant answered the complaint and plead that the perfection was valid as to Richard Holder. Richard Holder was not made a party to the action and received no notice of the action.

On May 5, 2000, Richard Holder filed for bankruptcy under Chapter 13 of the Code. In his petition, he did not list Beverly McWhorter as a codebtor on the mobile home debt. He also listed his marital status as single.

On July 17, 2000, the Chapter 13 Trustee for Beverly McWhorter and the attorney for Defendant signed a consent order that was entered by this Court. It stated that the preference was avoided as to Beverly McWhorter but not as to Richard Holder. "[I]t is hereby ... ordered that the lien held in favor of United Companies Funding, Inc. in the debtor's 1998 Homestead mobile home is avoided for the purposes of distribution as a secured creditor in the above-styled Chapter 13 Bankruptcy setting; and it is further ... ordered that the lien held in favor of United Companies Funding, Inc. in the 1998 Homestead mobile home is not avoided as to the interest of the co-debtor Richard M. Holder." *Hope v. United Companies Funding, Inc. (In re McWhorter)*, Adv. No. 00–5047 (Bankr.M.D.Ga. July 17, 2000).

At some point thereafter, the Chapter 13 Trustee for Richard Holder became aware of the proceeding in the Beverly McWhorter case. As a result, Trustee filed a complaint to avoid preferential transfer against Defendant on November 17, 2000, alleging that the perfection violated the codebtor stay under Section 1301 of the Code. Defendant argued that Trustee was collaterally estopped from raising that issue because of the terms of the order entered in the Beverly McWhorter case.

*Conclusions of Law*

The doctrine of collateral estoppel, also known as issue preclusion, applies to factual or legal issues that have been actually and necessarily determined, such that the determination becomes conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). This doctrine generally applies to bankruptcy proceedings. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966). To establish that a party is precluded from litigating an issue under collateral estoppel, it must be shown that (1) the identical issue was (2) actually litigated in a prior suit

which (3) could not have been decided without resolving the issue. *Williams v. Bennett,* 689 F.2d 1370, 1381 (11th Cir. 1982).

■ At trial, Defendant argued that the consent order entered by this Court on July 17, 2000, in *Hope v. United Companies Funding, Inc. (In re McWhorter),* precluded Trustee from litigating the issue of whether Defendant perfected its mobile home lien against Richard Holder. That order states, "[I]t is hereby ... ordered that the lien held in favor of United Companies Funding, Inc. in the 1998 Homestead mobile home is not avoided as to the interest of the co-debtor Richard M. Holder." *Hope v. United Companies Funding, Inc. (In re McWhorter),* Adv. No. 00–5047 (Bankr.M.D.Ga. July 17, 2000). On its face, the order appears to address the same issue that Trustee now raises in this case and consequently, appears to preclude further litigation of the issue. However, several issues prevent this Court from reaching the conclusion that Defendant advocates.

First, the order that Defendant is asking this Court to find has preclusive effect is a consent order. As noted in *Kaspar Wire Works, Inc. v. Leco Eng'g and Mach., Inc.,* the rules applicable to granting effect to judicial determinations should not automatically apply to consent judgements. *Kaspar Wire Works, Inc. v. Leco Eng'g and Mach., Inc.,* 575 F.2d 530, 538 (5th Cir.1978).[1] There, the court noted that consent decrees were usually entered to avoid litigating an issue. The court went on to adopt the approach of the Restatement Second of Judgements. *Id.* "In the case of a judgement entered without contest by confession, consent, or default, none of the issues is actually litigated.

Therefore, the rule of (issue preclusion) does not apply with respect to any issue in a subsequent action. The judgement may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such intention." *Id.* at 539 (quoting Restatement Second of Judgements, s 68 comment e (Tent. Draft No. 1, 1973)). The burden of proving such intent is on the party seeking collateral estoppel. *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 992 (5th Cir. 1977).

Here, Defendant relies on the consent order issued in the previous case. However, Defendant has not introduced any additional evidence to demonstrate that both parties intended the consent order to preclude any other party from litigating the issue of whether Defendant perfected its interest against Richard Holder. Without such evidence, Defendant has not met its burden of proof and has not demonstrated that the issue was actually litigated.

Second, the order that Defendant is asking this Court to find has preclusive effect impacts a party not named in the prior action. Richard Holder was married to Beverly McWhorter and purchased a mobile home with her. He was a codebtor with Ms. McWhorter on the mobile home when she filed for bankruptcy, and held that status during the Beverly McWhorter proceeding where the mobile home lien was at issue. However, because Richard Holder was not named as a party to that proceeding, he received no notice of the action or its outcome. He was not afforded an opportunity to be heard on whether Defendant perfected its mobile home interest by lien.

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

The Supreme Court has cautioned that while collateral estoppel is not per se unfair when mutuality of parties is lacking, it may be unfair if the party against whom it is used did not have the incentive to fully litigate the issue in the prior proceeding. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). In addition, the Supreme Court stated in *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, "Some litigants— those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position." *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). This is the situation presented in this case. Therefore, the Court finds that Trustee is not collaterally estopped from bringing this action and now turns to address the substance of Trustee's complaint.

■ Trustee filed a complaint to avoid preferential transfer in which Trustee states that Defendant perfected its lien against Richard Holder and Beverly McWhorter without seeking stay relief. Trustee then states that the perfection is therefore void, or alternatively that the

transfer constitutes a preference and should be avoided. Section 547 of the Bankruptcy Code governs preferences.[2] It provides that a trustee may avoid a transfer of interest if the transfer was made within 90 days of the date of filing a bankruptcy petition or within one year of filing if the creditor was an insider. Here, Defendant perfected its interest on December 22, 1999, and Richard Holder filed his bankruptcy petition on May 5, 2000. Finding that more than 90 days passed before Richard Holder filed his petition and finding that Defendant was not an insider at the time of transfer, Trustee cannot avoid the transfer under Section 547. Therefore, the Court looks to whether the perfection against Richard Holder is void as a codebtor stay violation.

■ Section 1301 of the Code governs the codebtor stay. Subsection (a) of that section states "Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt...." 11 U.S.C. § 1301(a)(West 1994).[3] Under Section 301 of the Code, the filing of a petition with the bankruptcy

**2.** Section 547(b) of the Code states:
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition,

if such creditor at the time of such transfer was an insider.
11 U.S.C. § 547(b) (West 1994).

**3.** The exceptions of subsections (b) and (c) pertain to when a creditor has a negotiable instrument and when a creditor seeks relief from the stay, respectively. Since the debt in this case does not relate to a negotiable instrument and Defendant did not seek relief from the stay before perfecting its lien, these exceptions are not applicable and will not be addressed further.

court constitutes an order for relief.[4] As such, the order for relief in Beverly McWhorter's bankruptcy case was entered on the date she filed her petition, August 5, 1999. Defendant perfected its lien against Beverly McWhorter and Richard Holder on December 22, 1999. Therefore, the perfection came after the relief order was entered. In addition, the debt at issue is a consumer debt as defined by Section 101(8) of the Code. Section 101(8) states " 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8)(West 1994). Here, the debt at issue was created by Beverly McWhorter and Richard Holder for the purchase of a mobile home to be used as their residence. Therefore, the only remaining issues are whether Defendant's act of perfection constitutes an act to collect all or any part of the debt and whether Trustee for Richard Holder's bankruptcy case is a party who can raise this issue.

At trial, Defendant argued that Section 1301 does not specifically state that a creditor cannot perfect its interest against a codebtor when the stay is in effect, yet Section 362 of the Code, which governs the stay as to debtors, does state that a creditor cannot perfect its interest.[5] Accordingly, Defendant argued that Congress did not intend for Section 1301 to reach perfection of an interest against a codebtor, for had they intended such a reach they would have stated so, as they did in Section 362. The Court disagrees with Defendant.

The text of Section 1301 does not specifically state that perfection of an interest is an act to collect all or any part of a debt, and neither does the legislative history relating to this section. However, the legislative history for Section 1301 does state that where there would be imminent disposal of property in which a creditor has an unperfected security interest "[T]he court should lift the stay to allow the creditor to perfect his rights against such property." S.Rep. No. 989, at 139 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5925. The legislative history suggests that such a situation would warrant the granting of stay relief because the creditor's interest would be irreparably harmed. Based on this history, it seems that Congress did intend for Section 1301's codebtor stay to apply to the perfection of a creditor's interest and did intend for the perfection of a security interest to be viewed as an act to collect all or any part of a debt. Accordingly, Defendant's act of perfecting its interest without seeking relief to do so was a stay violation.

The last issue raised by Defendant at trial was whether Trustee for Richard Holder is an entity entitled to raise the codebtor stay violation as an issue. Defendant argued that the codebtor stay is intended to benefit the debtor, not the co-

---

4. Section 301 of the Code states:
   A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.
   11 U.S.C. § 301 (West 1994).

5. Section 362(a) of the Code states in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
   (4) any act to create, perfect, or enforce any lien against property of the estate;
   (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.
11 U.S.C. § 362(a) (West 1994).

debtor. Therefore, Richard Holder, as co-debtor in the previous case, months before he became a debtor in his own case, was not an intended beneficiary in the Beverly McWhorter case.

■ Under Section 362 of the Code, stay violations are considered void *ab initio*, meaning that the violations are deemed without effect and are rendered an absolute nullity. *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984). This is so without regard to whether the debtor or codebtor raises the issue in a bankruptcy proceeding. *See Harris v. Margaretten & Co., Inc.*, 203 B.R. 46 (Bankr.E.D.Va.1994). The rationale for viewing stay violations in this manner was explored in *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317 (8th Cir. BAP 1999). " '[T]he fundamental importance of the automatic stay to the purposes sought to be accomplished by the Bankruptcy Code requires that acts in violation of the automatic stay be void, rather than voidable. Concluding that acts in violation of the automatic stay were merely voidable would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered for a sufficient period of time. This may be an acceptable risk to some creditors when measured against a delayed pro rata distribution.' " *Vierkant*, 240 B.R. at 323 (quoting *In re Garcia*, 109 B.R. 335 (N.D.Ill. 1989)).

■ As noted in *Harris v. Margaretten & Co., Inc.*, this same general rule should apply to codebtor stay violations under Section 1301 as well. *Harris v. Margaretten & Co., Inc.*, 203 B.R. 46, 50 (Bankr.E.D.Va.1994). It is only in the exceptional case where annulment of the stay would be appropriate, effectively validating the acts that violated the stay. *Id.* This Court has previously found that annulment of a stay is appropriate where the creditor demonstrates that the violation was innocent and demonstrates that the violation did not interfere with the "breathing spell" afforded to debtors or impact negatively on other creditors. *IMC Mortgage Co., Inc., v. Brown (In re Brown)*, 251 B.R. 916, 919(Bankr.M.D.Ga.2000). At trial, Defendant did not argue for annulment of the stay or make such demonstration. Accordingly, this Court finds that Defendant's perfection of its interest is void as a violation of the codebtor stay and finds that it is of no consequence that Trustee is the party who raised the issue with this Court.

An order in accordance with this opinion will be entered on this date.

### ORDER

In accordance with the memorandum opinion entered on this date, it is hereby

ORDERED that the perfection of the lien by Defendant against Richard Holder is void. The debt owed to Defendant is an unsecured debt.